UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHIEM TRAN | No. 2:18-cv-3000 KJM DB |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| HUNTER ANGELEA, | |
| Respondent. | |

Petitioner Khiem Thuong Tran, a state prisoner, proceeds pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted of second degree murder entered on January 15, 2016 in the Sacramento County Superior Court. (ECF No. 18-1 at 181-82.) He now challenges that conviction by arguing that the trial court's failure to sua sponte modify the voluntary intoxication jury instruction was prejudicial. For the reasons set forth below, this court recommends denying the petition.

**BACKGROUND**

I. **Facts Established at Trial**

The California Court of Appeal for the Third Appellate District provided the following summary of the facts presented at trial:

> Defendant killed his wife by stabbing her eight times. That night, defendant and his wife went to a party. Shortly before they left the party, defendant was holding a beer bottle. Someone asked him to

finish it. Defendant replied that he had already had seven beers. His wife drove them home.

Defendant and his wife lived with defendant's parents. Defendant's father had gone to bed around 10:00 p.m. He woke to hear defendant and his wife arguing and yelling, though he could not make out what they were saying. He was not concerned though: they would argue every month or so.

When defendant's parents heard defendant's son crying, they went into the master bedroom. There, they found the wife lying on the ground. Defendant's father called 911. As he did, he saw defendant crawling down the hallway; defendant was also trying to call 911.

Defendant's wife died from multiple stab wounds. She had two stab wounds on her chest and six on her upper back. She also had minor cuts on her right hand, which were consistent with defensive wounds.

Defendant also had a number of stab wounds. He had a cluster of five or six superficial stab wounds near his left nipple and another cluster of superficial wounds, near the middle of his chest. That cluster, however, had a "rather large, very gaping wound," that went "a little bit into the chest cavity." The gaping wound was very different from the other wounds.

An expert for the defense opined defendant's wounds were inflicted at separate times and by different mechanisms. The tightly clustered wounds could be due to self-infliction. But the gaping wound implied the defendant moved, and "usually you see movement when one is stabbed," as opposed to self-inflicted.

Defendant's blood was collected at 12:04 a.m., and his blood-alcohol concentration ranged from 0.128 to 0.175 percent.

After the murder, defendant spoke with a detective and made numerous inculpatory statements, which were played for the jury: "we got home—we both laughing and we both have fun and I don't know what happened after that. I was so stupid why? . . . There's something wrong in my head?" "I think—I did it—I did everything so you don't ask any more please sir—I (unintelligible) I don't know the only thing is I remember—is I shouldn't do it." "I killed my wife—I don't know what else I can tell you."

When asked how he had received the stab wounds, he said: "I think she did me once—I did my twice—I don't know—I don't remember." The detective tried to clarify: "Okay so you think she stabbed you once and then you stabbed yourself twice is that what you're sayin'?" Defendant said: "Yeah I think so—I don't remember how many I did . . . ." Asked why he would stab himself, defendant said: "If she die I want to die with her."

(ECF No. 18-8 at 3–4; People v. Tran, No. C081997, 2017 WL 5022365, at *1–2 (Cal. Ct. App. Nov. 3, 2017).)

2

After hearing the evidence, the trial court instructed the jury on the applicable law. (ECF No. 18-1 at 136–73.) Those jury instructions included CALCRIM 220, which states "[i]n deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial."[1] (Id. at 140; see also ECF No. 18-3 at 260.) The trial court also instructed the jury on CALCRIM 625 voluntary intoxication:

> You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation.
>
> A person is *voluntarily intoxicated* if he becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect.
>
> You may not consider evidence of voluntary intoxication for any other purpose.

(ECF No. 18-1 at 171; see also ECF No. 18-3 at 277.)  None of the parties objected to the voluntary intoxication jury instruction. (ECF No. 18-3 at 254–55.)

II.     **Procedural Background**

  **A.     Judgment**

A jury found petitioner not guilty of first degree murder and guilty of second degree murder. (ECF No. 18-1 at 182.) The trial court imposed a prison term of 15 years to life for second degree murder with a one-year enhancement for using a deadly weapon to commit the offense. (Id. at 223; ECF No. 18-3 at 386-88.)

  **B.     State Appeal and Federal Proceedings**

Petitioner timely appealed his conviction on two grounds: (1) the trial court erroneously instructed the jury that it "may," rather than "must," consider evidence of his voluntary intoxication in determining defendant's mental state; and (2) Penal Code section 29.4 improperly foreclosed consideration of intoxication on implied malice. (ECF No. 18-5.) The California Court

---

[1] Before the trial began, the trial court also instructed the jury on CALCRIM 103 reasonable doubt.

3

of Appeal disagreed and affirmed the conviction. (ECF No. 18-8.) Petitioner subsequently filed a petition for review in the California Supreme Court. (ECF No. 18-9.) On January 10, 2018, the California Supreme Court summarily denied review. (ECF No. 18-10.)

On November 16, 2018, petitioner filed the present petition seeking habeas corpus relief. (ECF No. 1.) Respondent has filed an answer. (ECF No. 17.) Petitioner filed a traverse. (ECF No. 20.)

## STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

A court entertains an application for a writ of habeas corpus by a person in custody under a judgment of a state court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for an alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000) (stating that "a violation of state law standing alone is not cognizable in federal court on habeas.").

This court may not grant habeas corpus relief unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405–06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). But it may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam) (citing Parker v. Matthews, 567 U.S. 37 (2012));

4

see also Carey v. Musladin, 549 U.S. 70, 76–77 (2006). Nor may circuit precedent be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Marshall, 569 U.S. at 64.

A habeas corpus application can invoke § 2254(d)(1) in two ways. First, a state court decision is "contrary to" clearly established federal law if it either applies a rule that contradicts a holding of the Supreme Court or reaches a different result from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405–06). Second, "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 120 S. Ct. at 1522; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 786–87.

A petitioner may also challenge a state court's decision as being an unreasonable determination of facts under § 2254(d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). Challenges under this clause fall into two categories; first, the state court's findings of fact "were not supported by substantial evidence in the state court record," or second, the "fact-finding process itself" was "deficient in some material way." Id.; see also Hurles v. Ryan, 752

F.3d 768, 790–91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" category, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012) (quoting Taylor v. Maddox, 366 F.3d 992, 999–1000 (9th Cir. 2004), overruled on other grounds by Murray v. Schriro, 745 F.3d 984, 999–1001 (9th Cir. 2014)). The "fact-finding process" category, however, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008) (en banc). For claims upon which a petitioner seeks to present new evidence, the petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

This court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

6

banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome if "there is reason to think some other explanation for the state court's decision is more likely." Id. at (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision rejects some of petitioner's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply, and a federal habeas court reviews the claim de novo. Stanley, 633 F.3d at 860.

## ANALYSIS

Petitioner only presents one ground for relief. He argues that the trial court's failure to sua sponte modify the voluntary intoxication jury instruction was prejudicial. The relevant jury instruction stated that the jury "may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way." (ECF No. 18-1 at 171.) Petitioner asserts that the trial court should have modified the instruction to state that the jury "must," not "may," consider evidence of defendant's voluntary intoxication defense. He claims that the trial court's failure to do so violated his right to due process under the Fourteenth Amendment.

### I. State Court Opinion

Petitioner also raised this claim on direct appeal. In the last reasoned state court decision, the California Court of Appeal rejected the claim on the merits, concluding that the instruction was unambiguous and, assuming there was an error, defendant failed to show prejudice. The court reasoned:

> The challenged instruction is unambiguous: it informs the jury that it "may consider" voluntary intoxication "only in a limited way." The instruction then proceeds to explain the limited way a jury "may consider" voluntary intoxication. Defendant's reading runs counter to that plain meaning as well as another instruction given

7

> (CALCRIM No. 103) that the jury, "must impartially compare and consider all the evidence that was received throughout the entire trial." Defendant's reading is therefore unpersuasive. (See *People v. Avena* (1996) 13 Cal.4th 394, 417 [we do not concern ourselves with whether a meaning can be "teased out" of instruction]; *People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions."].)
>
> And even assuming arguendo defendant's reading is correct, he could not establish prejudice. For one, in all probability his intoxication led the jury to find him not guilty of first degree murder. (See § 29.4, subd. (b) [on a murder charge, voluntary intoxication is admissible on the issue of whether the defendant premeditated, deliberated, or harbored express malice aforethought].) For another, voluntary intoxication can negate express malice, not implied malice. (*Ibid*.) This presents an all but insurmountable hurdle where the underlying act, from which the inference was drawn, involves stabbing the victim eight times. (See *People v. Elmore* (2014) 59 Cal.4th 121, 133 ["Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger"].)

(ECF No. 18-8 at 5.)

**II.   Discussion**

A federal habeas court must determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973).) The instruction cannot merely be "undesirable, erroneous, or even 'universally condemned.'" Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). It must violate a constitutional right. Id. Mere errors of state law in jury instructions may not form the basis of habeas relief. See Waddington v. Sarausad, 555 U.S. 179, 190–91 (2009); Gilmore v. Taylor, 508 U.S. 333, 342 (1993). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (citing Cupp, 414 U.S. at 147.)

When a jury instruction is ambiguous, the court must determine if there is a reasonable likelihood that the jury applied the instruction in a manner that violates the Constitution. Id. This requires proof that the trial error resulted actual prejudice, meaning a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citing Kotteakos v. United States, 328 U.S. 759, 776 (1946); see also Davis v. Ayala, 576

U.S. 257, 267–68 (2015); Hedgpeth v. Pulido, 555 U.S. 57, 61–62 (2008) (per curiam); Fry v. Pliler, 551 U.S. 112, 121–22 (2007).

The Supreme Court has cautioned that there are few infractions that violate fundamental fairness. Id.; see, e.g., Sarausad, 555 U.S. at 191–92; Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam) (stating that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation"); Jones v. United States, 527 U.S. 373, 390–92 (1999); Gilmore, 508 U.S. at 344.

Here, petitioner's argument that the jury instruction violated his due process rights fails. There is no Supreme Court precedent that holds that the voluntary intoxication jury instruction, as given in this case, violates due process. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). Furthermore, other federal habeas courts have rejected similar challenges to CALCRIM 625. See, e.g., Delreal v. Grounds, No. C 13-03423 WHA, 2014 WL 573383 at *9 (N.D. Cal. Feb. 11, 2014); Olvera v. Long, No. 12cv1433 WQH MDD, 2013 WL 5348425 at *8 (S.D. Cal. Sept. 30, 2013); Torres v. Adams, No. C 09-2431 RMW PR, 2011 WL 837766 at *9–10 (N.D. Cal. Mar. 3, 2011).

Even if there was an error in the challenged jury instruction, it cannot be viewed in isolation. Estelle, 502 U.S. at 72. As noted by the California appellate court, other jury instructions informed the jury that they "must impartially compare and consider all the evidence that was received throughout the entire trial." (ECF No. 18-8 at 5; ECF No. 18-1 at 140; see also ECF No. 18-3 at 260.) Viewing the voluntary intoxication jury instruction in the context of the entire trial record, there is no reasonable likelihood that the jury applied the instruction in an unconstitutional manner.

Petitioner's reliance on United States v. Birbal, 62 F.3d 456 (2d Cir. 1995) is misplaced. In Birbal, the trial court improperly instructed the jury on the government's burden of proof beyond a reasonable doubt. Id. at 459–60. The trial court's erroneous instruction stated that, should the government fail to prove defendant's guilt beyond a reasonable doubt, the jury "may"

9

acquit defendant, presuming his innocence. Id. at 460. The Second Circuit concluded that acquittal is not optional in that situation; if the government does not meet its burden of proof, the jury "must" find defendant not guilty. Id. "By instructing the jury that it 'may,' rather than 'must,' acquit if the government failed to meet this burden, the court gave the jury the clearly unlawful option on a lower standard of proof." Id. Unlike Birbal, the voluntary intoxication jury instruction at issue here does not misstate the burden of proof beyond a reasonable doubt.

## CONCLUSION

Petitioner fails to meet the standards set out in 28 U.S.C. § 2254(d) by showing the state court decision was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts.

Thus, it is RECOMMENDED that petitioner's petition for a writ of habeas corpus (ECF No. 1) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

/////

/////

/////

/////

/////

In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  June 14, 2021

DLB15;
PATH

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE